IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| In the matter of CHESAPEAKE MARINE TOURS, INC., d/b/a WATERMARK CRUISES, OWNER OF THE MOTOR VESSEL M/V QUATRO, MD 8540 AR, for Exoneration from or Limitation of Liability, | * * * * * | Civil Action No. GLR-20-3255 |
| Limitation Plaintiff. | | |

\*\*\*

# MEMORANDUM OPINION

THIS MATTER is before the Court on Claimants Steven Bryson ("Steven") and Samantha Bryson's ("Samantha") (together, "Claimants") Motion to Dissolve the Injunction and Stay the Limitation Proceedings (ECF No. 29); Limitation Plaintiff Chesapeake Marine Tours, Inc., d/b/a Watermark Cruises' ("Watermark") Motion to Strike Jury Demand (ECF No. 24); Watermark's Motion to Strike Limitation Affirmative Defense (ECF No. 28); and Watermark's Motion for Partial Summary Judgment (ECF No. 33). The Motions are ripe for disposition and no hearing is necessary. See Local Rule 105.6 (D.Md. 2021). For the reasons outlined below, the Court will grant Claimants' Motion and deny Watermark's Motions without prejudice.

## I.   BACKGROUND

### A.   Factual Background

This limitation action arises from an incident that occurred aboard the Motor Vessel QUATRO, MD 8540 AR ("Quatro"), which is owned and operated by Watermark. (Verified Compl. Admiralty ["Compl."] ¶¶ 4–5, ECF No. 1). Claimants assert that they boarded the Quatro on or about May 24, 2019, for a tour of Spa Creek in Annapolis,

Maryland. (Claim of Steven Bryson & Samantha Bryson ["Claim"] ¶ 6, ECF No. 15). During the voyage, the wind speed increased and conditions became gusty. (Id. ¶ 7). Following communication from his supervisor indicating that other passengers were awaiting pickup, the Captain of the Quatro expressed to Claimants that he needed to hurry back to shore. (Id. ¶ 8). As the ship approached dock, Steven offered to assist the Captain in tying the Quatro to the dock, but the Captain declined and insisted it was not necessary to tie up the boat. (Id. ¶ 9). When they reached the dock, the Captain instructed Claimants to step off the Quatro. (Id. ¶ 10).

Claimants allege that when they sought to deboard the Quatro, the boat "suddenly and without warning came away from the dock." (Id. ¶ 11). This movement caused Steven to lose his balance and grab onto a railing to prevent himself from falling into the water. (Id. ¶ 12). The force of the movement, however, caused Steven's right arm to hyperextend behind his back, resulting in a "full-thickness tear of his right bicep." (Id. ¶¶ 12–13). During an operation to address the injury, Steven "suffered acute hypoxic respiratory distress and bronchospasm, and a subsequent post-operative heart attack." (Id. ¶ 13). This caused his physicians to place him in a medically induced coma in an intensive care unit. (Id.). After Steven was released from the hospital, he remained "effectively immobilized" and in "extreme pain" for several months. (Id.). This series of events traumatized Steven and Samantha and caused them to neglect their "company business." (Id. ¶¶ 13–14).

**B.     Procedural History**

Watermark filed this limitation action on November 10, 2020, accompanied by a Motion to Authorize Security and an Ad Interim Stipulation. (ECF Nos. 1–3). On

November 16, 2020, this Court issued an Order Accepting Security, an Order for Ad Interim Stipulation, an Injunction and Notice Order, and a Notice of Complaint for Exoneration from or Limitation of Liability. (ECF Nos. 7–9, 11). On November 20, 2020, the Court granted a Motion to Amend Notice of Complaint for Exoneration from or Limitation of Liability filed by Watermark and entered Amended Notice. (ECF Nos. 12–14). On December 31, 2020, Claimants filed a Claim and an Answer to Watermark's Complaint. (ECF Nos. 15, 16). Claimants filed an Amended Answer on January 20, 2021. (ECF No. 22).

Claimants filed their Motion to Dissolve the Injunction and Stay the Limitation Proceedings on February 19, 2021. (ECF No. 29). Watermark filed an Opposition on March 5, 2021, (ECF No. 34), and Claimants filed a Reply on March 19, 2021, (ECF No. 36).

Watermark has three Motions currently before the Court. First, on January 29, 2021, Watermark filed a Motion to Strike Jury Demand (ECF No. 24). Claimants filed an Opposition on February 12, 2021. (ECF No. 26). Watermark filed a Reply on February 26, 2021, (ECF No. 30), and on March 22, 2021, Claimants filed a Surreply, (ECF No. 40). Second, on February 16, 2021, Watermark filed a Motion to Strike Limitation Affirmative Defense (ECF No. 28). Claimants filed an Opposition on February 26, 2021, (ECF No. 31), and Watermark filed a Reply on March 11, 2021, (ECF No. 35). Finally, on March 5, 2021, Watermark filed a Motion for Partial Summary Judgment (ECF No. 33). Claimants filed an Opposition on March 19, 2021. (ECF No. 37). Watermark filed a Reply on April 2, 2021, (ECF No. 41), and on April 13, 2021, Claimants filed a Surreply, (ECF No. 44).

## II.   DISCUSSION

A.   <u>Motion to Dissolve the Injunction and Stay the Limitation Proceedings</u>

### 1.   Standard of Review

A shipowner may seek limitation of its liability for certain maritime claims under the Shipowner's Limitation of Liability Act, 46 U.S.C. § 30501 <u>et seq.</u> (the "Limitation Act"). Under the Limitation Act, a vessel owner may petition a federal court to limit its liability for damages or injuries that occur without the vessel owner's privity or knowledge to the value of the vessel or the owner's interest in the vessel. <u>See</u> 46 U.S.C. §§ 30505(a)–(b). An owner wishing to do so must file a complaint in federal court within six months of receiving notice of a claim and deposit with the court " a sum equal to the amount or value of the owner's interest in the vessel and pending freight, or approved security therefor[.]" Fed.R.Civ.P.Suppl.R. F(1). After an owner files an action under the Limitation Act and complies with the mandates in Rule F(1), all pending claims against the owner must cease and, upon the limitation plaintiff's request, the court must "enjoin the further prosecution of any action or proceeding against the plaintiff or the plaintiff's property with respect to any claim subject to limitation in the action." Fed.R.Civ.P.Suppl.R. F(3).

Section 1333 of Title 28 of the United States Code grants federal courts the maritime and admiralty jurisdiction described in Article III, section 2 of the United States Constitution, which includes jurisdiction over actions under the Limitation Act. The Court's jurisdiction, however, is qualified in that the grant of jurisdiction "sav[es] to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1). This so-called "Savings to Suitors Clause" preserves a plaintiff's choice to pursue his

4

maritime claims in an appropriate state or federal court in front of a jury. See Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 445 (2001). "Generally speaking, the right to determine whether a claim will proceed as an admiralty claim (without a jury) or as a common law claim (with a jury) belongs strictly to the plaintiff." In re Lockheed Martin Corp., 503 F.3d 351, 357 (4th Cir. 2007).

As the Supreme Court has explained, "[s]ome tension exists between the saving to suitors clause and the Limitation Act. One statute gives suitors the right to a choice of remedies, and the other statute gives vessel owners the right to seek limitation of liability in federal court." Lewis, 531 U.S. at 448. After considering this tension, the Lewis Court provided two circumstances under which a federal district court may dissolve its limitation injunction and permit an injured party to litigate her claims in a separate action:

> The first situation is when the value of the limitation fund exceeds the sum of all claims on the vessel. Lewis, 531 U.S. at 450, 121 S.Ct. 993. In such a situation, a shipowner's rights under the Limitation Act are protected, because no matter how the case is decided, his liability will not exceed the value of the vessel and her pending freight. See id. The second situation is when there is only one (1) claimant in the limitation proceeding and the parties can agree to certain stipulations that adequately protect the shipowner's limitation rights. Id. at 451, 121 S.Ct. 993. In that case, there is no risk that the shipowner's liability will exceed the value of the limitation fund, because only one (1) claim exists and the parties have agreed that the claim will not exceed the fund.

Matter of Great Lakes Dredge & Dock Co., L.L.C., 423 F.Supp.3d 246, 249 (E.D.Va. 2019). Moreover, even in instances where there is more than one claim on the vessel, "the claimants can issue a set of stipulations which, if they provide adequate protection to the

5

shipowner, can convert a multiple-claimant case into a single-claimant case." Id. (citations omitted).

**2. Analysis**

On November 16, 2020, the Court entered an injunction prohibiting "the commencement or prosecution of any actions or suits of any nature" that arise "by reason of the alleged injuries to Steven Bryson or Samantha Bryson" during the May 24, 2019 voyage. (Inj. & Notice Order at 1–2, ECF No. 9). Claimants move the Court to dissolve the Injunction and stay this limitation action while they pursue the remedies afforded to them under the Savings to Suitors clause. Watermark asserts that "it would be unjust, inequitable, and prejudicial to Limitation Plaintiff for the Court to dissolve the injunction and stay these limitation proceedings given the anticipated expensive, intrusive, and time-consuming litigation that it would face in state court without the supervision of this admiralty Court." (Opp'n Mot. Dissolve Inj. & Stay Limitation Proceedings ["Mot. Dissolve Opp'n"] at 3, ECF No. 34). At bottom, the Court agrees with Claimants and will grant their Motion.

As set forth above, there are two situations under which a federal district court may dissolve its limitation injunction and permit an injured party to litigate her claims in a separate action: (a) "when the value of the limitation fund exceeds the sum of all claims on the vessel"; and (b) "when there is only one (1) claimant in the limitation proceeding and the parties can agree to certain stipulations that adequately protect the shipowner's limitation rights." Matter of Great Lakes, 423 F.Supp.3d at 249 (citing Lewis, 531 U.S. at 451). Here, the value of all claims on the vessel ($3,000,000) clearly exceeds the value of

the limitation fund ($20,000). (See Claim for Property at 6, ECF No. 15; Compl. ¶ 9). Accordingly, the Court may not dissolve the injunction pursuant to option (a).

Claimants are thus left with option (b). This option is also ostensibly closed to them, given that there are two Claimants. However, this Court has dissolved injunctions in cases involving claims brought by a husband and wife upon finding that the claimants had provided stipulations that adequately protected the shipowner's rights. See Complaint of Mohawk Assocs. & Furlough, Inc., 897 F.Supp. 906, 911–12 (D.Md. 1995). Other courts in this circuit have dissolved injunctions in similar circumstances. See In re Ingram Barge Co., 419 F.Supp.2d 885, 890 (S.D.W.Va. 2006) (finding in a "multiple-claimant-inadequate-fund case" that shipowners were adequately protected where "claimants' stipulations prioritize their claims and provide that in 'in no event' will they recover more than [the limitation fund] until after the final adjudication of the limitation of liability action"); In re Campbell Transp. Co., No. 5:12CV68, 2013 WL 4478173, at *4 (N.D.W.Va. Aug. 20, 2013) (noting that stipulation that one claimant's claims "will have irrevocable priority over" the other claimant's claims "effectively transforms this case into the functional equivalent of a single claimant case and adequately protects the plaintiffs' limitation of liability rights"). Moreover, as the Campbell Transportation Court noted, while there is no Fourth Circuit case law on point, these decisions are in accord with decisions by the Second, Fifth, Sixth, Seventh, and Eleventh Circuits. Id. (citing In re Ill. Marine Towing, Inc., 498 F.3d 645, 651 (7th Cir. 2007); Beiswenger Enters. Corp. v. Carleeta, 86 F.3d 1032 (11th Cir. 1996); Texaco, Inc. v. Williams, 47 F.3d 765, 767–68 (5th Cir. 1995); Complaint of Dammers & Vanderhide & Scheepvaart Maats Christina

7

B.V., 836 F.2d 750, 756 (2d Cir. 1988); S & E Shipping Corp. v. Chesapeake & O. Ry. Co., 678 F.2d 636, 644 (6th Cir. 1982)).

The Court thus looks to Claimants' stipulations in this case. Here, Claimants have provided the following stipulations:

> 1. Claimants hereby agree and concede that Chesapeake Marine Tours, Inc. dba Watermark Cruises ("Limitation Plaintiff") is entitled to and has the right to litigate the issue of whether it is entitled to limitation of its liability under the provisions of the Limitation of Liability Act ("The Limitation Act"; 46 U.S.C. §30501 et seq.) in this Court, and this Court shall have exclusive jurisdiction to determine that issue; although Claimants specifically reserve the right to deny and contest in this Court all assertions and allegations made by the Limitation Plaintiff in the Complaint for limitation filed in this matter.
> 2. **Claimants will not seek, in any action, in any state court or other federal court, any judgment or ruling on the issue of Limitation Plaintiff's right to limitation of liability**; and hereby consent to waive any claims of res judicata relevant to the issue of limitation of liability on any judgment that may be rendered in any state or other federal court.
> 3. Claimants, while not stipulating to or agreeing to the sum contained in Limitation Plaintiff's stipulation as to the value of the M/V QUATRO (the "Vessel") and its pending freight, hereby stipulate that **in the event any state court or other federal court renders a judgment or recovery in excess of Limitation Plaintiff's stipulation of value**, whether against Limitation Plaintiff or any other liable party or parties who may make a crossclaim over and against Limitation Plaintiff, **in no event will Claimants seek to enforce such judgment or recovery to in excess of Limitation Plaintiff's stipulation of value until such time as this Court has adjudicated Limitation Plaintiff's Complaint for limitation of liability.**
> 4. Claimants further stipulate and agree that if Limitation Plaintiff is held responsible for attorneys' fees and costs which may be assessed against it by a co-liable defendant party seeking indemnification for attorneys' fees and costs, such claims shall have priority over the claim of Claimants.

>> 5. In the event this Court determines that the Limitation Plaintiff is entitled to limit its liability, **the Claimants agree and stipulate that the claims of Steven Bryson shall irrevocably take priority over the claims of Samantha Bryson**.

(Claimants' Stipulation Supp. Mot. Dissolve Inj. & Stay Limitation Proceedings at 1–2, ECF No. 29-2 (emphasis added)). These stipulations are very similar to—and in some ways more protective than—stipulations that courts in this circuit and other federal appellate courts have previously found adequately protected the interests of shipowners in multiple-claimant-inadequate-fund cases. The Court finds those decisions persuasive. The Court thus finds that Claimants' stipulations "effectively transform[] this case into the functional equivalent of a single claimant case and adequately protect[] the plaintiffs' limitation of liability rights." In re Campbell Transp., 2013 WL 4478173, at *4.

Watermark has not provided case law contrary to these decisions. Instead, Watermark baldly asserts that "[i]t would unfairly prejudice [Watermark] to be required to defend against a claim one hundred and fifty times larger than the value of its vessel and limitation fund before a decision is made as to whether limitation of liability will be afforded." (Mot. Dissolve Opp'n at 4). But Watermark provides no support for its position that this Court should exercise its discretion to deny Claimants their right to pursue their claims in a forum of their choosing simply because the value of their claims greatly exceeds the value of the limitation fund. The Court is aware of no authority supporting this argument. Accordingly, the Court will grant Claimants' Motion.

**B.     Watermark's Motions**

Without exception, Watermark's Motions attempt to resolve issues best left for either (a) the court tasked with litigating Claimants' lawsuit, or (b) after the disposition of Claimants' lawsuit confirms the relevance of the Motions. For these reasons, the Court will deny Watermark's Motions without prejudice.

**1.     Motion to Strike Jury Demand**

Watermark moves to strike Claimants' jury demand on the basis that "claimants in a limitation action have no right to a jury trial under these circumstances." (Mem. Supp. Limitation Pl.'s Mot. Strike Jury Demand ["Mot. Strike"] at 2, ECF No. 24-1). Claimants "request a trial by jury on all claims so triable." The parties agree that such claims do not include Watermark's limitation claim. (See Mot. Strike at 1–2; Resp. Mot. Strike Jury Demand at 2, ECF No. 26). Rather, in Limitation Act proceedings, "the court, sitting without a jury, adjudicates the claims." Lewis, 531 U.S. at 448. However, "[t]rial by jury is an obvious . . . example of the remedies available to suitors." Lewis, 531 U.S. at 454–55; see also In re Lockheed Martin Corp., 503 F.3d at 356 (noting that the Savings to Suitors Clause "permit[s] maritime in personam claims to be pursued in federal court as maritime (and thus non-jury) claims, in state court as legal claims, or in federal court as legal claims (for which a jury trial is available) if an independent basis for federal court jurisdiction exists").

The parties agree that the Limitation Act claim remaining before this Court will not be decided by a jury. As set forth above, the Court will dissolve the injunction and stay these proceedings while Claimants pursue their claims against Watermark in an appropriate

10

forum of their choosing. The remaining question of which of Claimants' claims are entitled to a trial by jury is a question to be resolved in the forum in which those claims are presented. This Court thus declines to rule on the issue and will deny this Motion without prejudice.

> **2.    Motion to Strike Limitation Affirmative Defense**

Included in Claimants Amended Answer is its Sixth Affirmative Defense (the "Timeliness Defense"), which states that Watermark "failed [to] file its Complaint for Exoneration from or Limitation of Liability within the six month time period from receipt of a claim in writing, in accordance with the requirements of 46 U.S.C. § 30511(a) and Fed. R. Civ. P. Supp. R. F(1)." (Am. Answer at 5, ECF No. 22). Watermark moves to strike the Timeliness Defense on the grounds that Claimants have not provided a factual basis for it. As Watermark correctly explains, this Court requires that affirmative defenses "be pled in such a way as to 'ensure that an opposing party receives fair notice of the factual basis for an assertion contained in a [ ] defense.'" Haley Paint Co. v. E.I. Du Pont De Nemours & Co., 279 F.R.D. 331, 336 (D.Md. 2012) (quoting Bradshaw v. Hilco Receivables, LLC, 725 F.Supp.2d 532, 536 (D.Md. 2010)).

Claimants argue that the relevant facts needed to support the Timeliness Defense are in Watermark's control and they require discovery to gather the information necessary to support the defense. Claimants also request that, if the Court grants Watermark's Motion, they be granted the opportunity to amend their Amended Answer to assert additional facts to support the assertion made in the Timeliness Defense. They provide several examples of such facts in their briefing.

Practically speaking, the result of the parties' requests creates a procedural thicket that need not be addressed at this time. Granting the Motion would require the Court to consider Claimants' request to amend their Answer. Pursuant to Federal Rule of Civil Procedure 15(a)(2) and Local Rule 103.6 (D.Md. 2021), however, a party that has already amended as a matter of course—as Claimants have here—may only amend their pleading a second time with the consent of the opposing party or by obtaining leave of the Court. Those same rules require that a party moving for leave to amend accompany such a motion with an original and redlined copy of the proposed amended pleading. Claimants have not formally moved for leave to amend or presented a proposed amended pleading; were they to do so, Watermark's briefing makes clear that it would oppose their motion. Thus, the Court would need to direct Claimants to formally move for leave to amend and allow the parties to fully brief the motion.

Inasmuch as the Court will dissolve the injunction and stay this matter, however, it need not force the parties to undergo this process at this time. Both parties are likely to uncover substantial additional information during the course of the litigation initiated by Claimants following this Court's decision. In the wake of that litigation, assuming the dispute remains extant, Claimants are likely to move for leave to amend their Amended Answer. The Court sees no need to compel briefing and issue a decision on the viability of a proposed amended pleading immediately prior to staying the proceeding for which the

amended pleading is relevant. Accordingly, the Court declines to rule on this issue and will deny the Motion without prejudice.[1]

### 3.     Motion for Partial Summary Judgment

Watermark moves for partial summary judgment on two issues: (1) that it owed no warranty of seaworthiness to Claimants; and (2) that its Complaint for Limitation was timely filed. Both issues relate to Watermark's Limitation Act claim and therefore may be rendered moot by the disposition of Claimants' separate action. Accordingly, for much the same reasons that the Court declines at this time to decide Watermark's Motion to Strike Limitation Affirmative Defense, it will also decline to rule on the issues presented in Watermark's Motion for Partial Summary Judgment. The Court will therefore deny this Motion without prejudice.

---

[1] The Court notes that Watermark has argued that declining to rule on this issue prior to allowing Claimants to proceed with their claims will result in it being "severely prejudiced and effectively deprived of its rights under the Limitation Act." (Reply Mem. Supp. Limitation Pl.'s Mot. Strike Affirmative Defense at 1, ECF No. 35). However, it does not explain how declining to rule on this issue will prejudice it, and the Court does not believe it will. Regardless of the disposition of this issue, Claimants will be permitted to advance their claims outside of this action, and Watermark will be forced to expend resources defending those claims. Moreover, the Court's decision regarding whether to strike the Timeliness Defense is not dispositive as to the outcome of this limitation action. Perhaps for these reasons, courts in this circuit routinely decline to rule on issues relevant to the limitation action following a decision to dissolve the injunction and stay the proceedings. See, e.g., Norfolk Dredging Co. v. Wiley, 357 F.Supp.2d 944, 951 (E.D.Va. 2005), aff'd, 439 F.3d 205 (4th Cir. 2006); Complaint of McAllister Towing of Va., Inc., 999 F.Supp. 797, 803 (E.D.Va. 1998). Doing so complies with the directive that "[t]he district court should select the most efficient manner of proceeding." In re Williams Sports Rentals, Inc., No. 217CV00653JAMEFB, 2020 WL 4340153, at *4 (E.D.Cal. July 28, 2020) (quoting Newton v. Shipman, 718 F.2d 959, 963 (9th Cir. 1983)). Accordingly, the Court does not credit Watermark's concerns that declining to rule on this issue at this time will unfairly prejudice Watermark.

## III. CONCLUSION

For the foregoing reasons, the Court will grant Claimants' Motion to Dissolve the Injunction and Stay the Limitation Proceedings (ECF No. 29) and deny Watermark's Motions (ECF Nos. 24, 28, 33) without prejudice. A separate Order follows.

Entered this 30th day of July, 2021.

/s/
George L. Russell, III
United States District Judge